IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SEMINOLE ELECTRIC
COOPERATIVE, INC.,

      Plaintiff,

v.                                        CASE NO. 3:03-cv-589-J-32 MCR

UTILITY WORKERS UNION OF AMERICA,
LOCAL 551,

      Defendant.
_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Plaintiff, Seminole Electric Cooperative, Inc. ("SECI"), by and through its undersigned counsel and pursuant to Rule 3.01 of the Rules of the United States District Court for the Middle District of Florida, hereby submits its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. As set forth herein, the Defendant's motion is due to be denied and the Plaintiff's previously-filed summary judgment motion granted as the undisputed material facts of this matter establish that the arbitrator exceeded the authority granted to him under the parties' collective bargaining agreement and, as such, the arbitration award is due to be vacated.

I.  Background[1]

In the present case, SECI seeks to vacate an arbitration award issued by Arbitrator Roger I. Abrams on April 28, 2003, wherein, pursuant to a grievance filed under the authority of the collective bargaining agreement between SECI and the Utility Workers Union of America ("UWUA"), he overturned SECI's decision to dismiss Mark Felten from his employment as a mechanic.

In overturning SECI's decision, the arbitrator made specific factual findings, including finding that Felten was released to return to work as of April 6, 2002 after a medical leave. The arbitrator further found that Felten knew that he was expected to return to work upon being released by his physician and that he still chose not to do so. Indeed, the arbitrator emphasized, "[Felten] did fail to report for work immediately upon being released by his doctor."[2] (Arb. Dec., p. 20). The arbitrator also expressly noted that the parties' collective bargaining agreement expressly provided an enumerated list of reasons which were deemed to constitute "just cause" for dismissal, with such reasons including an "improper absence from duty without authority"

---

[1] The pertinent facts of this matter, together with record citations, are comprehensively set forth in the Plaintiff's Statement of Undisputed Material Facts contained within its previously-filed summary judgment motion. As such, rather than restate each pertinent fact, SECI only briefly restates the essence of those facts in this response.

[2] The UWUA contends that the arbitrator found that Felten was "on leave" between April 6 and his eventual return on April 18 and asserts that Felten provided a doctor's excuse covering April 6th through 18th. The UWUA's assertions in this regard are inaccurate. Rather, as noted above, the arbitrator specifically found that Felten was released by his physician on April 6th and did not return to work. Although the arbitrator did indicate that Felten did later turn in a letter from Dr. Zabad on May 10, 2002, the arbitrator specifically noted that Dr. Zabad only stated that "[a]t this time, I feel the patient is able to return to full-duty work on Monday, May 13, 2002, with no restrictions." (Arb. Dec., p. 9). Dr. Zabad did not indicate that Felten's absence between April 6th and April 18th were excused. Moreover, as the arbitrator found, Dr. Zabad was the same physician that released him to return to work on April 6th and the Plaintiff did not visit him again during the time in question (although Felten later visited Dr. Quick, the arbitrator explicitly

and "unsafe conduct or other misconduct while on duty or on Company property." Notwithstanding the fact that the arbitrator's factual findings clearly establish that Felten was absent from duty without authority, the arbitrator employed a traditional "just cause" standard and ignored the express limitations on his authority and ordered him reinstated.

The arbitrator, while ostensibly finding that Felten's absence was not unauthorized notwithstanding his factual findings to the contrary, nonetheless determined that Felten had committed misconduct that warranted "serious discipline" by reporting to work on April 18, 2002 despite of the fact that he was fully aware that he was unsafe for work. (Arb. Dec., p. 24). Indeed, the arbitrator, noting that "safety matters were involved" and referring to the Plaintiff's unsafe conduct stated that "no employee should act in a way that creates a potential safety hazard to himself and to others." (Arb. Dec., pp. 24, 26). Once again, however, notwithstanding the fact that the parties' collective bargaining agreement specifically provides that "unsafe conduct" constitutes "just cause" for dismissal, the arbitrator mitigated SECI's decision and imposed only a four-week suspension.

II. The Arbitrator's Utilization of a "Traditional Just Cause Standard" as a Justification for Overturning Felten's Dismissal Notwithstanding his Factual Findings that Felten did not Report to Work When Released by his Physician Warrants the Vacation of his Decision

In its summary judgment motion, the UWUA contends that the arbitrator's decision should be upheld since he ultimately concluded that SECI lacked just cause to dismiss Felten. The UWUA's contention in this respect is without merit as it ignores the express factual findings made by the arbitrator – that Felten did not return to work when released by his physician despite knowing that he was expected to do so – and ignores the express limitations placed upon the

---

found that Dr. Quick "refused to write" a medical excuse covering April 6th through April 18th). (Arb. Dec., pp. 5-6, 19).

76185_1

arbitrator's authority when determining just cause. In particular, as noted above, the parties' collective bargaining agreement requires that the arbitrator find just cause once he determines, as a factual matter, that Felten was absent without authorization. As the arbitrator's factual findings demonstrate that Felten was indeed absent without authorization, his conclusion to the contrary, in which he employed a "traditional just cause standard" notwithstanding the more specific language of the collective bargaining agreement, was erroneous.

There is no dispute in this case that the judicial review of arbitration awards is limited. 9 U.S.C. § 1 *et seq.*; *Butterkrust Bakeries v. Bakery, Confectionary and Tobacco Workers Int'l Union, AFL-CIO, Local No. 361*, 726 F.2d 698, 699 (11th Cir. 1984). Nonetheless, this limited review does not mean that the Court is left simply to rubber stamp arbitration decisions. To the contrary, the Supreme Court and the Eleventh Circuit has repeatedly held that where, as here, an arbitrator exceeds the bounds of authority delegated to him by the collective bargaining agreement and dispenses his own brand of industrial justice, the award is properly vacated. *United Paperworkers Int'l Union, AFL-CIO v. Misco*, 484 U.S. 29, 36, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987) (citing *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)); *Butterkrust Bakeries*, 726 F.2d at 699; *Riccard Prudential Ins. Co.*, 307 F.3d 1277, 1288-89, *reh'g and reh'g en banc denied*, 54 Fed. Appx. 693, 2002 WL 31720236 (11th Cir. 2002); *Bruno's, Inc. v. United Food and Commercial Workers Int'l Union, Local 1657*, 858 F.2d 1529, 1531 (11th Cir. 1988).

In particular, the Supreme Court has held that an arbitrator "may not ignore the plain language of the contract." *Misco*, 484 U.S. at 38; *see also IMC-Agrico Co. v. Int'l Chemical Workers Council of the United Food and Commercial Workers Council of the United Food and Commercial Workers Union, AFL-CIO*, 171 F.3d 1322, 1325 (11th Cir. 1999) ("An arbitrator

exceeds the scope of his authority and issues an award that fails to draw its essence from the collective bargaining agreement that he is interpreting when he issues an award that contradicts the express language of the agreement"); *Bruno's, Inc.*, 858 F.2d at 1531 ("However, an arbitrator does not have unfettered discretion. He may not impose a remedy which directly contradicts the express language of the collective bargaining agreement"); *Warrior & Gulf Navigation Co. v. United Steel Workers of America, AFL-CIO-CLC*, 996 F.2d 279, 281, *reh'g denied*, 12 F.3d 221 (11th Cir. 1993) (*per curiam*), *cert. denied*, 511 U.S. 1083, 114 S.Ct. 1834, 128 L.Ed.2d 462 (1994) ("[A]n arbitrator may not ignore the plain language of the contract").

Thus, notwithstanding the UWUA's assertion that the arbitrator was arguably "interpreting" the collective bargaining agreement and thus his award must therefore draw its essence from the agreement, the case law is clear that where, as here, an arbitrator ignores the express language of the collective bargaining agreement, the decision is properly vacated.

In addition, the Eleventh Circuit, in one of its most recent pronouncements on the issue, specifically noted that, where a collective bargaining agreement specifically enumerates certain conduct that will constitute grounds for dismissal, the arbitrator is not free to impose a different standard once he determines the facts support the enumerated reason. *IMC-Agrico*, 171 F.3d 1327. Significantly, the Court in *IMC-Agrico* declined to vacate an arbitration award and held that where the collective bargaining agreement does not contain a specific enumeration of conduct that would constitute just cause, the arbitrator was free to resort to the traditional just cause standard. 171 F.3d at 1327-28. However, in so holding, the Court specifically noted that an employer and a union were free to negotiate specific disciplinary penalties for particular offenses which an arbitrator would then not be free to disregard utilizing general notions of just cause:

It is an unobjectionable principle that an employer can bargain to have included in a collective bargaining agreement a provision to the effect that certain identified types of employee conduct always provide just cause for discharge. *See Warrior & Gulf Navigation*, 996 F.2d at 281 (agreement provided that employee who tested positive a second time for drug use was subject to "immediate discharge"); *Delta Queen [Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, AFL-CIO]*, 889 F.2d [599,] 600 [(5th Cir. 1992)] (agreement stated that officers could be discharged for insubordination or carelessness); *Morgan Serv. [v. Local 323, Chicago & Central States]*, 724 F.2d [1217,] 1219 [(6th Cir. 1984)] (agreement provided that company could discharge "without redress" an employee who committed insubordination). Likewise, the collective bargaining agreement can confer on an employer the right to establish rules listing types of conduct that will always be sanctioned by immediate dismissal. *See, e.g., General Drivers, Warehousemen and Helpers Local Union 968 v. Sysco Food Services, Inc.*, 838 F.2d 794, 796 (5th Cir.1988) (agreement stated that "The Union recognizes the right of the Company to make and enforce Rules and Regulations and that violation thereof may be just cause for discipline or discharge of employees"). <u>If the collective bargaining agreement confers on the employer the absolute right to discharge employees for certain types of conduct, then the inquiry of an arbitrator can be limited to "whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." *Id.* Furthermore, once an arbitrator implicitly finds that the employee engaged in conduct that is defined by a bargaining agreement to be an offense subjecting him to discharge, then that it is an implicit finding of just cause and the arbitrator's task is finished.</u> *See, e.g., Delta Queen*, 889 F.2d at 604 ("If a collective bargaining agreement defines 'proper cause' to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequences of his finding that a listed offense was committed").

*IMC-Agrico*, 171 F.3d at 1327 (Emphasis supplied).

In the present case, the parties specifically bargained for a collective bargaining agreement which provided an enumerated list of conduct that was to be deemed just cause for dismissal, with the list including absences from work without authorization. Thus, once the arbitrator determined as a factual matter that Felten was released to return to work as of April 6 but did not return to work despite knowing that he was supposed to do so, his inquiry was at an end. Notwithstanding, the arbitrator employed a traditional just cause standard as a means of

questioning both the wisdom and the intent of the parties' agreed upon language.[3] In this respect, the arbitrator's decision states, in pertinent part:

> The introductory sentence in Article VI, Section 4 helps explain what the parties meant. It states that the Company has the right to terminate for the listed reasons or "for any other just cause." (emphasis [added by arbitrator]). This wording suggests that the listed reasons must be read in light of the "just cause" standard.

(Arb. Dec., p. 16).

As is readily apparent from this language, the arbitrator has done exactly what the Eleventh Circuit in *IMC-Agrico* has stated that an arbitrator is not free to do – he has utilized the traditional just cause standard[4] as a means of undermining and disregarding the parties' specifically enumerated list of reasons constituting just cause for dismissal. As such, the Court's decision in *IMC-Agrico* compels the vacation of the decision and the denial of the UWUA's summary judgment motion. The UWUA's argument that the arbitrator was permitted to apply

---

[3] Incredibly, in this respect, the arbitrator even opines that the parties could not possibly have intended that just cause be found for "any unexecused absence of any length" notwithstanding the express collective bargaining language to the contrary. (Arb. Dec., p. 16). Similarly, the arbitrator, contrasting unauthorized absences with employee theft (which clearly warrants dismissal in the eyes of the arbitrator), poses the question, "But can the Company decide that [unauthorized absences] too was a material breach and terminate him without use of some form of progressive discipline?" (Arb. Dec., p. 20). Clearly, the arbitrator is questioning the wisdom of the parties' collective bargaining provisions which authorize dismissal for unauthorized absences without regard to progressive discipline. After all, the arbitrator does note that SECI had, during the past several years, sought to curtail employee performance issues by changing its culture and "raising the bar." (Arb. Dec., p. 8). Significantly, notwithstanding the fact that the arbitrator clearly places theft and unauthorized absences into different categories when it comes to finding just cause, the parties' collective bargaining agreement specifically lists both theft and unauthorized absences as reasons constituting just cause for dismissal. (CBA, pp. 23-24). Thus, notwithstanding the arbitrator's personal view to the contrary, it is clear under the collective bargaining agreement that unauthorized absences are to be treated in the exact same fashion as theft. That is, once the arbitrator found the facts supported a finding of an unauthorized absence, his just cause inquiry was at an end and the grievance was due to be denied.

[4] The "or for any other just cause" language was obviously included in the collective bargaining agreement to indicate that additional reasons other than those specifically enumerated in the contract might also constitute just cause for dismissal.

76185_1

7
ALLEN, NORTON & BLUE, P.A.
PROFESSIONAL ASSOCIATION

the traditional just cause standard is completely contrary to the Eleventh Circuit's decisions discussed above.

III. Alternatively, the Arbitrator's Finding that Felten Engaged in a Serious Safety Violation Warrants his Dismissal

As noted above and in SECI's summary judgment motion, the arbitrator did find that Felten engaged in a serious safety violation by reporting to work when he acknowledged that he was "still not safe and ready for work" on April 18, 2004. (Arb. Dec., p. 24). As the arbitrator found:

> Felten precipitated this crisis by pressuring his doctor to release him early to return to work. That might have been understandable – he had no money, he had to work, he didn't want to lose his job – but it was wrong nonetheless. He could have endangered himself and his fellow employees had he returned to work at that time. When he did return to work on April 18, he was still not safe and ready for work. That conduct by the Grievant deserves serious discipline. No employee should act in a way that creates a potential safety hazard to himself and to others.
>
> . . . The Grievant's misconduct, however, would have warranted a lengthy discipline, at most a four-week suspension.
>
> * * *
>
> In focusing on the remedy in Mark Felten's case, we must also consider the fact that safety matters are involved.

(Arb. Dec., pp. 23-24, 27) (Emphasis supplied).

As is apparent from this language, the arbitrator clearly found that Felten had engaged in a serious safety-related violation that warranted discipline. At that point, the arbitrator was once again constrained by the language of the collective bargaining agreement which mandated that he deny the grievance and uphold the dismissal if the employee engaged in conduct which constituted one of the specifically enumerated reasons for dismissal. As noted above, "unsafe conduct" is also specifically listed in the collective bargaining agreement as constituting just

cause. Accordingly, once the arbitrator found that Felten committed such a violation, he was not free to dispense his own notion of the appropriate disciplinary penalty. Accordingly, Felten's dismissal must be upheld.

Indeed, the arbitrator's decision is due to be vacated on the ground that he was not authorized to decide the issue of the appropriate disciplinary penalty for Felten's safety violation, given that SECI had not yet made an initial decision regarding that issue.[5] Thus, to the extent that the arbitrator possessed the authority to inquire into Felten's safety violation, he was obligated to uphold the dismissal pursuant to the terms of the collective bargaining agreement and, alternatively, if he did not possess the authority to inquire into the safety violation then his decision must be vacated as to that issue and SECI must be given the opportunity to review what, if any, discipline would be appropriate.[6]

IV. The Arbitrator's Imposition of Reinstatement Conditions Exceeded his Authority

---

[5] SECI had not yet considered the issue of Felten's safety violation as it assumed that Felten was safely able to resume his duties once he was released to return to work. It was only at the arbitration that SECI later learned that Felten was taking the position that he was not safely ready to return to work upon being released and that he "pressured" his physician into releasing him anyway.

[6] Indeed, the UWUA apparently agrees that the arbitrator did not possess the authority to address the appropriate penalty for this violation as it states, in reference to the safety violations, that "the Company never asked the Arbitrator to decide whether Felten violated [the provisions of the contract relating to safety]." (Defendant's Motion for Summary Judgment, p. 10). The UWUA's contention that, "only upon seeing [the arbitrator's finding of a safety violation], did it occur to the Company that other subsections of Article VI, Section might apply," is without merit. As noted above, the Company was unaware until the arbitration that Felten would take the position that upon being medically released to return to work he still could not safely report to work since he, in essence, improperly obtained the release from his physician. As with any company, SECI assumed that the medical release genuinely reflected Felten's condition and had been properly obtained by Felten until learning otherwise from him at the arbitration hearing. Felten should not be able to have it both ways – that is, asserting that he was privileged not to return to work when released since the release did not accurately reflect his medical condition (despite any medical documentation to that effect) and also asserting that he was privileged to report to work in an unsafe condition notwithstanding that he was the one who pressured the physician into providing an apparently false release.

76185_1

Lastly, even assuming *arguendo* for purposes of this argument that this Court was to find that the arbitrator correctly held that Felten should be reinstated, summary judgment in favor of the UWUA is nonetheless due to be denied as it is clear that the arbitrator exceeded his authority in imposing unrelated reinstatement conditions. In this respect, the arbitrator concluded his decision by stating that, although SECI had the authority to require a medical fitness examination for Felten, "[i]f it is determine[d] that he is medically unfit to perform his former duties, the Company shall reinstate Felten to alternative employment that makes a reasonable accommodation for his medical condition, <u>but at no reduction in his rate of pay</u>." (Arb. Dec., p. 26) (Emphasis supplied).

It is absolutely clear that the issue of what, if any, accommodations should be made if, hypothetically, Felten was unable to return to work as a mechanic was never submitted to the arbitrator. Indeed, the issue has not yet arisen to this day and perhaps might never arise (as Felten's health status and his ability to perform the essential functions of his position are presently unknown to SECI). While other applicable laws or contract provisions could potentially require an accommodation in the event that Felten is unable to perform his prior duties, the circumstances of his condition and the potential accommodations are purely speculative at this point. Indeed, a literal reading of the arbitrator's decision in this respect would require SECI to pay Felten his full rate of pay even if he were limited to performing a substantially lower paid position on a part-time basis.

The arbitrator's speculative award on an issue not yet confronted by the parties, let alone submitted for resolution to the grievance process, is improper. As the Eleventh Circuit held in *Butterkrust Bakeries*:

> [T]he law is well-established that an arbitrator "can bind the parties only on issues that they have agreed to submit to him." *Piggly Wiggly v. Piggly Wiggly*, 611 F.2d 580, 583 (5th Cir.1980). The issue submitted here was limited to whether there was just cause for Woodard's discharge. Therefore, once the arbitrator made a finding on this issue, his authority came to an end.

726 F.2d at 700.

In this case, the issue submitted for resolution to the arbitrator was "Was the Grievant discharged with just cause in accordance with the provisions of the Collective Bargaining Agreement? If not, what shall be the remedy?" (Arb. Dec., p. 2). Thus, once the arbitrator determined the issue of just cause for Felten's dismissal, his task was done and he lacked the authority to decide what, if any, course of action SECI should take if it later turns out that Felten was medically unfit to perform his former position. As a consequence, the UWUA's summary judgment motion is due to be denied and SECI's summary judgment motion should be granted.

Further, it is absolutely clear that the arbitrator was not empowered to order that Felten's wage rate be maintained at mechanic levels in the event his medical condition renders a transfer necessary. In this respect, the collective bargaining agreement specifically sets forth the negotiated wage rates agreed upon by SECI and the UWUA. (CBA, Appendix A). As such, the arbitrator's mandate that Felten be paid at his current rate of pay should he be placed into a different position clearly contravenes the wage rate schedules negotiated by the parties and expressly included in the agreement. The collective bargaining agreement does not provide for or permit wage rates different from those set forth in the agreement.[7] In accordance with the cases set forth above, the arbitrators award in this respect likewise ignores the plain language of

---

[7] Indeed, the collective bargaining agreement even provides that employees faced with a choice between a layoff or a transfer to a different position are only entitled to be paid at the wage rate established for the position into which the employee transfers. (CBA, Art. 7, Sec. 8). The same is true for transfers resulting from job eliminations. (CBA, Art. XVII, Sec. 1(E)).

76185_1

the collective bargaining agreement and thus cannot be said to draw its essence from the agreement. In essence, the arbitrator has directed that the parties violate the requirements of the agreement. As a result, this portion of the decision must be vacated, regardless of the outcome on any other issue.

WHEREFORE, the Plaintiff, Seminole Electric Cooperative, Inc., in accordance with the foregoing, respectfully requests that this Court deny the Defendant's summary judgment motion and grant its summary judgment motion.

Respectfully submitted,

_____
Mark E. Levitt
Florida Bar No. 193190
Brian Koji, Esquire
Fla. Bar No. 0116297
ALLEN, NORTON & BLUE, P.A.
324 S. Hyde Park Avenue, Suite 350
Tampa, Florida 33606
Tel: (813) 251-1210
Fax: (813) 253-2006
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by regular U.S. Mail, to Kathryn S. Piscitelli, Esquire, Egan, Lev, & Siwica, P.A, Post Office Box 2231, Orlando, FL 32802-2231 this 5th day of April, 2004.

_____
Attorney